WILLIAM H. BROADWELL

*v.*

W. P. HOWARD *et al.*

1. . SALE—*delivery to pass title as to creditors and subsequent purchasers of seller.* To affect subsequent purchasers without notice, and creditors, there must be an actual delivery of personal property, to consummate a sale; but the rule has its exceptions, as, in the case of warehouse receipts. Usage has made the possession of such documents equivalent to the possession of the property itself.

2. WAREHOUSE RECEIPTS—*effect of, when given by the seller.* The law makes no distinction in respect to grain purchased or acquired by the holder of such receipts from others, and those acquired from the warehouseman himself. The law does not prohibit him from selling his property, and if he does so in good faith, he may become its future custodian; and the fact that he keeps a public warehouse, is sufficient to put parties on inquiry as to the ownership of grain stored.

3. Where a warehouseman purchased grain stored by him, for another person, and with such other person's money, and took up his outstanding receipt, held by the vendor, and issued a new receipt to the person for whom he bought, it was *held*, that the grain was not liable thereafter to be taken in execution against the warehouseman.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was an action of replevin, brought by appellees against William H. Broadwell, sheriff of Morgan county, for the recovery of a lot of wheat. The wheat had been levied upon by the defendant, as sheriff, under an execution against Edward P. Fox, with whom it was stored. On the trial, a verdict and judgment were had in favor of the plaintiffs, and the defendant appealed. The material facts of the case will appear in the opinion.

Messrs. EPLER & CALLON, for the appellant.

Messrs. DUMMER & BROWN, for the appellees.

20—77TH ILL.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question presented here grows out of these facts: One Edward P. Fox owned, or, at all events, kept, a warehouse at Chapin. Appellees, who were commission merchants in St. Louis, entered into an agreement with him, whereby they were to advance money to him, with which he was to buy wheat, store it in his warehouse until such time as the market should justify its sale, and then ship it to them. As the wheat was stored in his warehouse, he was to send them warehouse receipts, to secure them for their advances. At the end of the season an account was to be taken of their transactions, in which appellees were to be allowed interest on their money at ten per cent, insurance, customary commissions, and all expenses. If anything was made beyond this, Fox was to have it, and if anything was lost, Fox was to make up the deficiency. They had transacted business in this way for several years, and the wheat in controversy was all purchased pursuant to the agreement, with money furnished by appellees. It was, with the exception of one lot hereafter mentioned, insured in the name of Fox, but the loss, if any, was payable to appellees as their interest should appear.

Fox issued and delivered to appellees warehouse receipts for the wheat, as follows:

" CHAPIN, *Nov.* 13, 1872.

1st. "Received of W. P. Howard & Co., on storage, at Chapin, Ill., twenty-six hundred and fifty bushels good red wheat, to be delivered (unavoidable casualties excepted.) on their order, on return of this receipt. Given under my hand this 13th day of November, 1872, at Chapin, Ill.

E. P. Fox."

2d. "Received of W. P. Howard & Co., on storage, in good order and condition, in my warehouse, at Chapin, Ill., six hundred bushels good red wheat, to be delivered (unavoid-

able casualties excepted,) on their order, on return of this receipt. Given under my hand, at Chapin, Ill., December 1st, 1872.                                        E. P. Fox."

3d. "Received of W. P. Howard & Co., on storage, in good order and condition, in my warehouse, at Chapin, Ill., nine hundred and ninety-seven bushels of red wheat, to be delivered (unavoidable casualties excepted,) on their order, on return of this receipt. Given under my hand, at Chapin, Ill., January 20th, 1873.                              E. P. Fox."

The wheat for which the last receipt was given had been stored in the warehouse of Fox, in September, 1872, by a Mr. Brownlow, to whom a warehouse receipt therefor was given, and he took out a policy of insurance on the wheat. Brownlow subsequently desiring to sell his wheat, a sample of it was sent to appellees, who thereupon instructed Fox to buy it at $1.60 per bushel, which he did, and on the 20th of January, 1873, he took up the receipt given to Brownlow, and executed that to appellees. At the same time, Brownlow assigned his policy of insurance to appellees.

The execution was not levied until the 21st of January, 1873, and the question is, was the wheat at that time the property of Fox, or of appellees? The argument of the appellant is, the wheat was the property of Fox when it was bought, and title did not subsequently pass to appellees by virtue of the warehouse receipts, because there was no actual delivery of the property, which, he insists, was necessary, as against creditors.

The general rule is, undoubtedly, that, to affect subsequent purchasers without notice, and creditors, there must be an actual delivery of personal property, to consummate a sale; but this rule has its exceptions, and, to adopt the language of the editors of Smith's Leading Cases, in the notes to *Lickbarrow* v. *Mason*, Vol. 1st, Part 2d, (7th Am. Ed.) 1197, "the exigencies of trade have called a class of instruments into being, which are, substantially, acknowledgments by public

or private agents that they have received merchandise, and from whom or on whose account, and usage has made the possession of such documents equivalent to the possession of the property itself, and to this class belong warehouse receipts." *Benton* v. *Curyea,* 40 Ill. 320, fully recognizes this doctrine.

We can not regard the distinction attempted to be drawn by counsel, between property purchased or acquired by the holder of such receipts otherwise than from the warehouseman, and that acquired from the warehouseman himself.

The law does not prohibit the warehouseman from selling his property, and if he does so in good faith. why may not he, as well as some one else, become its future custodian? The fact that he keeps a public warehouse is, itself, notice to the world that the property therein stored is held for others, at least sufficient to put parties interested on inquiry.

*Cool et al.* v. *Phillips et al.* 66 Ill. 217, was, in its material facts, analogous to the present case, and it was there held, the warehouse receipt carried the title to the property, as against the creditors of the warehouseman. See, also, *Gibson* v. *Stevens,* 8 Howard, 397; *Horn* v. *Barker,* 8 California, 614; *National Bank* v. *Walbridge,* 19 Ohio St. R. 424.

Fox swears his warehouse was a public one, and that the grain of different owners was kept separate. Under the act relating to warehouses, in force July 1st, 1872, then, it fell within class C, and no inspection was necessary. The brand or distinguishing marks of the grain is sufficiently stated on the face of the receipts, to bring them within the requirements of the 24th section of that act, and hence, by it they are made transferable, and their transfer by indorsement, as therein directed, would be a valid transfer of the property they represent. This, of itself, would seem conclusive that the receipts are, by statute, aside from any question as to their effect at common law, complete evidence of title in the persons to whom they are issued.

With regard to the suggestions of frauds that might. in the view we hold of the law, be committed by warehousemen

storing their own grain in their public warehouses, we deem it only necessary to say that we regard the evidence as relieving the present case from any charge of that kind. Whatever might have been held as to the ownership of this property, if the warehouse receipts had not been issued, it is undeniable it was bought with appellees' money, and that when it was stored in the warehouse it was stored for appellees, and held subject to the receipts. There was, therefore, no opportunity for deception as to the party for whom it was stored and held.

We are of opinion there is no error in the record, and the judgment below will, therefore, be affirmed.

*Judgment affirmed.*