Cornick *v.* Richards.

FREEMAN, J., delivered the opinion of the court.

The contest in this case is over the question of the right of priority on the part of various creditors of Richards, who was a stockholder in the Knoxville Iron Company, as to shares of stock attached to satisfy debts due by said Richards. In one case, that of W. P. Washburn, some other additional questions, not raised as to the other parties, occur, which will be disposed of in a subsequent part of this opinion. Richards being a non-resident debtor, in most of the cases, attachments have been levied on his shares of stock in the company. The date of these liens is fixed in all the cases in the record, so that there is no question to be decided on that aspect of the cases.

In a portion of the cases Richards had obtained money from parties, and had deposited or handed over certificates of stock to such parties as collateral security, with a power of attorney authorizing a transfer of the stock and sale in case he failed to pay at maturity. In the case of the note held by Cornick, this agreement as to the stock being the collateral, is in the face of the note, and a separate power of attorney in blank is given on the back of the certificate expressing the fact of sale and transfer of the shares of stock, the blank for the party to whom sold being properly filled up to Cornick in accordance with the clear intention of the parties. Before commencement of his suit, Tuttle, the President of the company, was notified of the transfer, and requested to transfer the stock on the books of the company in

Cornick v. Richards.

order to a sale of the stock, he being informed that it was held as a collateral. He declined to transfer it on the ground that he was advised by counsel that he ought not to do so except to an absolute owner. Thereupon Cornick filed his bill seeking to have this transfer made, and his right effectuated in payment of his debt by sale of the collateral. In addition, he alleged that the stock was only worth about twenty or twenty-five cents in the dollar, and that the amount of his collateral would not be sufficient to pay his debt. Richards being a non-resident, an attachment was prayed for and levied on $3,000 of additional stock to secure his debt. It is seen from this statement that Cornick's bill has two aspects, the one the enforcement of the collection of his debt, the other to compel the iron company to effectuate his title to his security, if necessary, in order to a sale by a transfer of the stock held by him on the books of the company. We may say here that in any view that may be taken of the question of transfer of stock as against the iron company, he has secured his priority to the pledged stock as the company had notice of his rights, and had refused to transfer the stock in pursuance of the contract between Cornick and the owner, Richards.

It has been correctly said by the Supreme Court of Indiana, in a well considered case, " that stock in a corporation held by an individual is his own private property, which he may sell or dispose of as he sees proper, and over which neither the corporation nor its officers have any control. It is the subject of daily commerce, and is bought and sold in market like any

other marketable commodity." See *Commissioner* v. *Reynolds*, 13 Am. Law Reg., 380. See also an elaborate review of the authorities by Judge Dillon; Thompson National Bank Cases, *Johnson* v. *Laflin*, 331. The character of this property, as the individual property of the holder, and the distinction between it, that is shares of stock, and the property of the corporation as the capital stock paid in, or other property owned by it, is well stated by Judge Nelson in the opinion of the Supreme Court of the United States in the case of *Van Allen* v. *Assessors*, 3 Wal., 573. He says, "The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter, and for the purpose for which it was created can deal with the corporate property as absolutely as a private individual can deal with his own." This is familiar law, as he says, found in any work that may be opened on the subject of corporations.

The interest of the holder of shares of stock in a corporation is a very different thing from this corporate property. Its leading features are thus given in the above opinion by Judge Nelson. This interest of the shareholder entitles him to participate in the net profits earned in the employment of the capital by the corporation during the existence of the charter in proportion to the number of his shares; and upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property held by the shareholder, like any

Cornick *v.* Richards.

other property that may belong to him. Numerous cases in our State announce these principles. In fact, they scarcely need the citation of authority to sustain them; they are now universally known as elementary on this branch of the law.

It follows from this, however, that the company could obtain no advantage by refusal to transfer on demand, nor make any objection to the transfer when properly sought by an assignee of the stock, whether the assignment was absolute or as a collateral to a debt. See authorities cited, and opinion of Judge Dillon, Thompson's cases, 340. The right to sell absolutely certainly carries with it the right to charge, pledge, or assign as a security for a debt, as the greater includes the less. In a word, the company had nothing to do with the terms of the sale or assignment, other things out of the way, when regularly made between the holder and his creditor, any more than it had the right to interpose a limitation upon the use or transfer of any other property owned by him. The company acted in its own wrong in refusing to transfer on demand, and can reap no advantage to itself from or by such wrong. What ought to have been done in this case must be considered as done so far as the company is concerned.

We now proceed to the discussion of the main question presented in the case, How can shares of stock owned by an individual be assigned or transferred, and under what circumstances is the transfer complete, so as to preclude creditors of an owner who attempts to assign or does hand over the certificate

for shares of stock as · collateral security for a debt, from fixing a lien upon the stock, or appropriating it by legal process to their debt?

This precise question as between creditors has not been adjudged by this court in any reported case. Certainly assuming as beyond question that the shares of stock are the individual property of the owner as any other property owned by him, it follows that the right of alienation, as an incident to the ownership of all property in this State, is complete in such owner, and no one could impose any restrictions upon the exercise of this right except by consent of the owner· of the property. It is on this well established principle that by-laws of a corporation prohibiting or imposing restraints on alienation have been held inoperative as contrary to the general law of the land. See Field on Corp., sec. 110, p. 728. As a matter of course the transfer of such property in fact would depend on the nature of such property, so far as its formalities were concerned, in some of the elements held essential to the transfer of property passing from· one to another, not being real estate, such as the matter of delivery, but the right to transfer would be, as we have said, untrammeled. The Legislature of the State would also, beyond question, have the power to regulate the formalities requisite to passing the title of this as well as all other property belonging to her citizens or under her jurisdiction.

So far as the nature of this property affects its transfer to an assignee, the general rule would ordinarily govern that such delivery as it is capable of

should be made to complete the transfer, and when the property itself is incapable of manual delivery, the transfer and delivery of that which represents it in form, as in case of warehouse receipts, or bills of lading, or the like, where the property is not desired or convenient to be handled, or more definitely designated. But as the Legislature has complete control over the question of the forms of transfer of property, we inquire first whether our Legislature has fixed any rule on this subject, and if so to what extent applicable, and between what parties.

The Code, ch. 2, with its sub-divisions, contains the general provisions enacted by the Legislature regulating this question as applicable to this class of private corporations. Article 4 of this chapter, entitled "General provisions in relation to private corporations," after providing various regulations for and defining rights and liabilities growing out of such corporate capacity, in sec. 1487 refers to stocks in the same, and is as follows: The stocks in all private corporations formed under this act (that is act of 1849–50, or to be hereafter created by special law) are personal property, and subject to levy and sale as such, the company in such case being required to make the proper entries in its stock or transfer book, but such sale will not relieve a stockholder from liabilities which had attached to him as such previous to the sale; neither will a voluntary sale." It seems obvious that this section can only be held to fix the character of stocks in such companies definitely as personal property, and subject it to levy and sale, as such is the

Cornick *v.* Richards.

declared purpose that it shall be levied on and sold as other personal property is sold. The next clause requires the company in case of such sale to make "the proper entries in its stock or transfer book, and imposes the duty on the company of showing the transfer or sale to the purchaser by entering the stock as transferred to him by the sale, so that he shall stand on the books of the company as its owner, and be entitled to the privilege of a stockholder in said company, for we take it as to these privileges the company may only recognize the title as shown on its stock book, so far as its own dealing with the stockholder is concerned. It is proper to add here that this right, that is the right conferred on a stockholder, to the privileges of a corporator, and to vote in stockholders' meeting for direction of the affairs of the company, the election of officers and the like, is usually overlooked in the definition of the right conferred by reason of ownership of stock, yet these rights are valuable as an incident to such ownership, and cannot properly be overlooked as an element of such ownership. It may, under the charter, be the sole means by which the shareholder's voice can be made potential in the management of his capital put into the corporation, and by which the other rights usually enumerated, to-wit., the receipt of dividends during the life, and sharing the capital at the dissolution of the corporation, can be made good for the proper management of the business, and is the means of securing these against improper management, the certain or usual means

Cornick *v.* Richards.

by which they are rendered valueless, or their value impaired.

But to return to the section. The next clause saves the liability of the debtor to the holder as to liabilities previously accrued by reason of the ownership of said stock, and says he shall not be relieved from them by such sale, and adds, neither will a voluntary sale, thus recognizing a forced sale by the officer by process of law providing for transfer in such case on the stock book, and also a voluntary sale, but no provision is found requiring the entry to show such sale on this book. It is insisted, however, that the succeeding section, 1491, contains a regulation of this question that is to be taken, as we understand the argument, to be equivalent to the requirements of our registration law as to sales or transfer of property therein required to be registered. In other words, until the requirements are complied with, as to all the world except probably between the immediate parties, certainly as to creditors and purchasers without notice, the sale is void.

The section is as follows: The stock books of the company shall be so kept as to show intelligibly the original stockholders, their respective interests, the amount which has been paid on their shares, and all transfer thereof; and such books, or a correct copy thereof, so far as the items mentioned in this section are concerned, shall be subject to the inspection of any person applying.

On looking at the previous sections immediately before this, from 1488, it will be seen they are a series

of regulations fixing duties upon the officers and imposing liabilities for failures to perform such duties. For instance, fraud in failing to comply substantially with the articles of incorporation, deceiving the public as to liabilities, the division of funds, the keeping false books, make them liable to the penalties imposed. Then follows the section cited requiring the stock books to be kept as specified. It is clear from these provisions they can only be fairly construed as intended to govern the conduct of the company and its officers in their management of the business under their control, and apply solely as regulations upon corporate action, but have no reference whatever to the rights or conduct of individuals who may own shares of the stock. The section does not even accurately refer to such parties or such a subject as their right to transfer their property. The officers must so keep their stock book as to show original stockholders the amount paid on their shares, and all transfers thereof, but how the transfer or sale thus shown is to be made between the party selling and the party buying or receiving an assignment, is not attempted to be fixed, on the contrary in view of universal commercial usage, the known habits of business men in dealing with such stocks, the inference is very strong from the language, if not conclusive, that this was left as was established by general law, and the company only required to make their stock book show, or evidence by its entries, a transaction previously made, complete and executed. It could not be fairly said that the showing a fact to have occurred, to-wit., a transfer of stock

Cornick v. Richards.

means that it is the transfer itself, that is, that the fact could not exist without this particular duty performed showed it to have been done. The sale or transfer would necessarily precede this entry of the fact on the stock book.

It would seem to follow that in order to render the sale or assignment of stock void in connection with these requirements, the Legislature would of necessity be required to have so expressed its will, a requirement so materially affecting the rights of holders of property ought at least to be directed to such holders, and in terms impose the duties upon them before they should be held affected by it. An owner of shares or a purchaser from him might read this section fixing the duties of the officers of a corporation, and never suspect that any thing was required of them by the language used in order to complete a purchase or sale of such stock. If such had been the purpose of the Legislature it was easy, and the natural mode of carrying out that intention, simply to have added, "and all transfers not so shown shall be held void as to creditors or innocent purchasers." Such language would have hardly been germane to the main purpose of the section, but would have been effective. Something is claimed in favor of the view assumed as being in accord with the spirit of our registration laws. That transfers of property recorded on official books kept for the purpose by a public officer is the policy of these laws, we know, but that a requirement that such record shall be kept in the books of a private corporation is in accordance with this we cannot very

well see. Be this as it may, the two laws are very different, the registration laws expressly making all instruments not recorded or noted as required void as to creditors or purchasers without notice. It would be a very strained construction to say the requirement of the section under consideration is equivalent to this language in our registration laws. It would be much more reasonable, we think, to say that with our system of registration, so long established, if sales or transfers of this kind of property were to be recorded at all, as notice to the world of title, they would have been required to be regularly registered, and thus the record be where all other records of the kind are found, in an official book, kept in a public office, made by a public officer under the sanction and safeguard of his official responsibility.

This argument receives considerable aid, to say the least of it, from section 1463 of art. 2 of the same chapter, regulating manufacturing, quarrying and mining corporations, which provides that "no transfer of stock is valid (that is in these companies) for any purpose except to render the person to whom it is made liable for the debts of the company as herein provided, until it has been entered on this stock book, showing to and from whom the transfer was made." This section of the Code, as well as sec. 1491, are taken from the acts of 1849–50, and embodied in the Code by the compilers, and so passed by the Legislature. It can scarcely be conceived they would have made a specific provision in the same chapter in such plain language as to certain corporations, and left the mat-

ter to inference so remote as to all other corporations of like character, or that a specific provision would have been made in one part of the chapter as to certain corporations, when in a latter portion a general provision is embodied including all private corporations of precisely the same character.

We need not notice secs. 3034 and 3035, under title executions, as they specifically refer to stock in turnpikes and railroads, and prescribe the duties of an officer levying an execution as to notice to the secretary or other officer intrusted with the books of the turnpike or railroad company. We cannot extend this to the general subject in any way without doing what the Legislature has not chosen to do.

There being no legislative regulation as to the mode of transferring title to stock in a corporation now, either by general law or in the charter in this case, we have the question to be solved on general principles of law based on sound reason and public policy. The right to dispose and transfer the title being a recognized and universal incident to ownership of property, the exercise of that right should not be trameled by any restrictions except such as grow out of the nature of the property or the demand of a sound public policy. It is urged that from the nature of this property in stocks, and its concomitants such as being an interest issuing out of a corporation having officers and keeping books showing the issuance of its stock, which books are required to be kept in the manner we have seen by sec. 1491, that the existence of the stock or its ownership originally being shown

on these books that it ought not to be permitted to be transferred except by entries on such books. We need but say here that we can see no need for this requirement as between the parties contracting for a transfer. The books are not public records in any proper sense of our law. Why one private individual should be required to effectuate the sale of the property of another in which he has no title or interest as property by entering the fact in his books, it is not easy to see, not even if the fact be that the party selling had originally purchased the property from him. Yet this fairly represents the fact in the case of stock in a corporation. The original owner purchases it from the corporation by paying or agreeing to pay what it calls for, receiving a certificate of the fact of such purchase and ownership from the corporation. When the stock is so purchased, however, as we have seen, it is his private individual property, and he may sell it as such, or assign it with or without a consideration, and no one can object, creditors and innocent purchasers under other rules of law not being affected for reasons of public policy in case the transfer is voluntary without value paid for it. It would seem to follow that whenever the title passed out of the party himself by a fair contract of transfer, no registration law being in the case, and no fraud purposed as against a creditor of the party selling, that his right as against the property ought to end. It cannot be maintained that a mere creditor, as such, has thereby any right to prevent the free use and disposition of his debtor's prop-

·erty, where no fraud intervenes or is intended against his right. The general rule being settled that the creditor can only go on the right owned by his debtor, but that his right can rise no higher, the law not in general interposing arbitrarily to create or add to the creditor's property to his benefit.

This being true, whenever the debtor has fairly sold and parted with his property, the right of the creditor as against that property ceases, and ought to cease, as a matter of course. Fraudulent conveyances and registration laws are out of the way in this ar-·gument.

In the case of *Memphis Appeal Pub. Co.* v. *Pike,* 9 Heis., 698, Keating held stock in the company and had sold it to a third party, who had received a transfer on the books of the company. The creditor, Pike, had, however, obtained a judgment in the Supreme Court at Jackson, April, 1870, while the sale by Keating had not been made until June afterward. The execution was levied on the stock by simple endorsement of the fact by the officer on it, and sold and purchased by Pike, the creditor, who filed a mandamus, after demanding a transfer, against the company, to have the fact of his ownership entered on the books, which was refused. This court held, in an opinion by Chief Justice Nicholson, after full consideration, that the levy and sale completed the title in Pike when the sale was made, and he had a right to have the transfer made on the books by the company. This case certainly settles that the title to property in stocks held by a debtor is sub-

ject to legal process, may be levied on by the officer and sold, the title transferred to the purchaser without being evidenced by an entry on the books of the corporation, no special enactment requiring it. We take it that an attachment is equally as effective to fix a lien as an execution, and its levy would impound the property as effectually as the levy of an execution. This may be considered settled. The question then recurs as to whether a sale or assignment, either absolutely or as collateral, is good against a creditor with legal process without notice to the company or transfer on its books. We have seen the transfer on the books is not required by statute.

To sustain the position that any thing is required farther than the assignment of the title by the owner, the doctrine as to the assignment of an equity is invoked. The rule seems to be well settled that an encumbrancer of equitable property may acquire a superior right over an older assignee by superior diligence giving him a claim to the protection of a court of equity. Thus, says Judge Story, a second incumbrancer on equitable property who has given notice of his title to the trustees of the property, will be preferred to a prior incumbrancer who has failed to give such notice, for the notice is an effectual protection against any subsequent dealings on the part of the trustees, so the second assignee of a residuary interest in the estate of a testator who has given notice to the executor, gets a like preference over a prior assignee. See Story's Eq. Ju., vol. 1, sec. 421b. In the cases cited in support of the doctrine, it is seen

to rest on the idea that the party giving notice to the trustee who has the legal title, has gone as far toward equitable possession as is possible, for after notice given, says Lord Lyndhurst, 3 Russ., 1, cited in note 2, the trustee of a fund becomes a trustee for the assignee who has given him notice, and the party has done everything reasonably practicable to prevent it being dealt with in fraud of an innocent purchaser afterward. This is all well in the cases cited, and the rule is well based on the idea that the one party having done more to perfect his title than the other, therefore has a superior claim in a court of equity. But the application of these principles is not pertinent to the case now in hand. In the cases referred to, the trustees or executor had the legal title, the assignor only an equitable one. In the case of shares of stock the corporation is not a trustee holding the legal title of the shares of stockholders. The corporation holds the legal title to the capital stock and property of the corporation, but the shares of stock belong both legally and equitably to the shareholders. The company cannot deal with nor assign or encumber the shares in any way, and have not even a *scintilla* of right in the stock, either legal or equitable, so that it would be an arbitrary holding entirely unsupported by the truth of the case, to apply the rule cited as to assignment of an equity to the different state of facts of assignment of shares of stock in a corporation. That the debtor has a legal title since our statute making stock subject to execution, would be in accordance with the settled rules of

law in our State having no exception, that only a legal title is subject to this process.

The only other ground on which it can be maintained that any thing is required to perfect the title of an assignee to stock more than a transfer of the usual evidence of such property in what is known as the rule laid down in the case of *Clodfelter* v. *Cox,* 1 Sneed, 330, that the assignment of a chose in action is not complete so as to vest the title absolutely in the assignee until notice of the assignment to the debtor, and this both as to the debtor and third persons.

This rule, thus given, though in fact a *dictum,* or at least said in a questionable form by Judge McKinney, may be admitted to be sound in reference to the case and class of cases in which it was then announced. It was the case of an assignment on the record of a judgment of the circuit court. The case was really decided on a point that precluded fairly a decision of this question, for it was a case of garnishment of the judgment debtor by process from a justice of the peace, in which the court held the proceeding did not lie, consequently the right claimed under the garnishment had no existence, and was not before the court, still the case has been followed in our State, and the rule a sound one, as applied to the assignment of a chose in action of the character then under consideration, that is, a judgment, and of notice to the debtor in such cases; and it is distinctly held that notice of such assignment must be given to the debtor. In all such cases where there is a debtor

Cornick v. Richards.

who may be subject to garnishment, or may be involved in difficulty for want of notice, the rule is one of sound policy. In its statement, however, it only applies to cases of assignment of debts. And I may add, to such debts as are not evidenced by a writing as between the parties, such as may pass from hand to hand in ordinary transactions among business men, as open or unsettled accounts and equitable rights, such as legacies and residuary portion of estates, as in the cases cited from Story. We believe no case in our State has applied the rule to any other cases than such as we have indicated. The case of *Clodfelter* v. *Cox*, is, by Judge McKinney, in *Ins. Co.* v. *Hamilton*, 5 Sneed, 276, limited to the assignment of equitable rights and choses in action, or where the legal title did not pass, and the assignee had to sue in the name of the assignor for his use to recover the money, and his reasoning, as well as that of the other cases, implies necessarily a chose in action in the form of a debt, when notice must be given to the debtor for his protection, as a matter of course it can have no application to negotiable paper on contracts made assignable by our statute so as to pass the legal title. See *Ibid*, 277. So also it was held by this court in the case of the *Gayoso Saving Institute* v. *Fellows, et als.*, 6 Col., 472, that it was not necessary to give notice in order to effectuate the transfer where "a bond, bill or note, or like evidence of debt is assigned and transferred by manual delivery to the assignee, and this whether the legal title in the instrument passed by the assignment or not."

What acts, says Judge Andrews, will complete the

transfer of choses in action, must depend on the nature of the particular case. If the debt be represented by bill, bond or note, or other written evidence of debt, whether negotiable or not, it would ordinarily be sufficient to deliver the instrument to the assignee at the time of the assignment. If the assignor of the bond or note has delivered the instrument to the assignee, he has done all in his power to signify his intention to part with control over it, and this act as completely denudes the assignor of the *indicia* of ownership as delivery in case of a personal chattel.

If this view be sound, it seems clear that the assignment and delivery of certificate of stock being the *indicia* of ownership delivered by the corporation to the owner, should be equally as effective, nor can we see how the assignee could ever sue or be required to sue in the assignor's name to recover on his stock. It does not carry with it, and is not evidence of a debt or contract to pay. This being so, can the rule of notice find any proper application to the case of assignment of shares of stock? In the first place this is not like a judgment, open account, or an equity. The evidence of the debt in such cases does not exist in such form as that it may be transferred, the judgment is on the docket of the court, the open account has never been liquidated or signed by the party to be charged, exists only on the books of the creditor or in legal obligation. Here there is an agreed evidence of the right, one signed by the parties from whom it is received, that is the corporation, properly

authenticated and given to the shareholder as the accredited evidence of this property, which, in fact, has only a legal existence, consisting in certain rights evidenced by the paper, growing out of the fact of his having purchased from the company his shares. There is no analogy between this stock and a judgment or open account, nor can it be called an equity in the sense of having obtained a right which must be sued for in the name of another who has the legal title. The assignor transfers all the title he has, and that is a complete legal title. The company that issued it has no legal title in trust for him. In a word, it is a right of a peculiar character, but still one existing in contract, evidenced by the certificate, at least this is as good evidence of it as any other, and it is issued by the company for this very purpose, and so accepted by the party. This certificate, we know by universal usage among parties accustomed to deal in such securities, is recognized as the evidence of right and ownership, and passes by such usage from hand to hand by such assignments as are before us as readily as a negotiable note by endorsement. Again the rule applies to a case of a debtor, for the notice, by the very term of the rules, is to be given to the debtor. It certainly cannot be maintained that the corporation is a debtor to the shareholder in the amount called for in his share. This has never been held, and we know is not the fact, so that the rule can have no application on this basis, but its application is repelled. It cannot be said to be an equity in the sense of assignment of one as given by Story and

the authorities referred to, for these the assignment is to be strengthened and perfected by notice to the trustee or holder of the legal title. Here the corporation does not hold the legal title, is not a trustee for it. Now, unless we insist on an arbitrary application of the rule where the facts do not meet its requirements, in fact cannot be brought within it, it is impossible to say the principle discussed can have any rightful control over the question. We have no debtor, no trustee to be notified. A notice to. the corporation on either of these principles may just as well be given to any other person or corporation as to the corporation issuing the stock. Where both the terms of a rule of law, as well as its reason and purpose, fail of application to the case in hand, it would be doing violence to all the established principles of our jurisprudence to say the rule should be applied, and such is the case before us.

The only other aspect of the case that need be considered is, what is the soundest public policy, and what the rule that will best subserve this end?

We may say here that authorities most respectable may be found in support of either view that may be desired on this question. But as no statute of one State establishes a rule, and no authoritative adjudication has been made as a precedent, we are at liberty to adopt the rule which commends itself to our judgment as best, all things considered, and give it due sanction of our authority for the guidance of our people and courts.

In adopting a rule as to the transfer of this pe-

Cornick v. Richards.

culiar kind of property, we should look to the nature of the property, the uses to which it is put in the transaction of the business of the country, and at the same time not be unmindful of the established habits of dealings with the same among business men, this last should have an influence in this question of full weight, because we may be assured that what has been universally agreed on and established as the custom of such merchants, is the result of a felt need that has been met by the keenest practical sagacity dealing with the question.

It is true our State is comparatively an agricultural one, but still in our business centers this species of property is as much used in the transactions of the market as in any other State, in proportion to the amount of such property held by our citizens. In addition, we must not forget that we are laying down a rule not alone for to-day, but for the future, with all its development of our resources, agricultural, mining and manufacturing, and this development must inevitably bring an immense commerce in the handling of its products.

We know, as a, matter of well accredited current history, that stocks are used every day in the transactions of our business men as collaterals, as well as sold, and that the universal practice is to transfer or assign the certificate of the stock with a power of attorney in blank to be filled up, authorizing a transfer by the corporation on its books to the purchaser on the presentation of which power, properly authenticated, the corporation transfers the stock to the purchaser or

holder, and when the sale is absolute it is usual to issue new certificates to the party, taking up the old. Such a practice facilitates the easy use of this property in commercial transactions. The requirement that the title could alone be transferred on the books of the corporation, or by notice to the corporation, would greatly tend to trammel this use, and, as far as we can see, notice to the corporation can serve no practical end, and has no appropriate place in the transaction, so far as passing the title from a holder to a purchaser, or the right of a creditor as to a purchaser, for he can, as he will always do, protect himself by requiring an assignment of the certificate, and then a transfer on the books of the corporation. The rule requiring transfer on the books of the corporation can only serve to give a creditor who has a judgment or attachment a legal advantage who has never given credit on the faith of the stocks, over the other who has advanced his money on them and taken the evidence of his security by a transfer of the certificate. In such cases alone will the contest be likely to arise, as the party who intends to trust to the security of such property will always take the assignment. In such a contest the equities are altogether in favor of the assignee who has advanced his money on the faith of the collaterals.

The well settled rule of law as to symbolic delivery of the representative of the thing sold is in accord with the views maintained in the above opinion. Indorsement of a bill of lading is held a good delivery in performance of a contract of sale, so as to

defeat any action by the buyer against the vendor for non-delivery of the goods. See cases cited, Watts Act. & Def., vol. 5, 578, Assignment of warehouse receipts and a gin receipt for cotton to be ginned and baled, was held in Arkansas to pass title to the cotton free from the landlord's lien for rent. *Ibid* and cases. The reason of the rule is given by the Supreme Court of Illinois in the case of *Broadwell* v. *Hurard*, 77 Ill., 305, cited by Wait as above, that "usage has made the possession of such documents equivalent to the possession of the property itself." The case is much stronger in favor of the certificate of stocks where they are the sole representative of the property held by the owner, and where the property has no substantial existence, and therefore is incapable of manual delivery. We believe, in popular and commercial language, when stocks are spoken of, this certificate is what is always referred to, and this certificate the universally accredited evidence of the ownership of such property. A holding that would overturn all this should only be made, for the most imperative reasons, or in obedience to a statute enacted by the law making power of the State. It is proper to add that as a matter of course we do not hold these certificates negotiable, or that any of the incidents of such character goes with them by assignment, so that the assignee must take subject to previous equities as any other assignee standing in the shoes of his assignor. We only hold that the title passes and is completely transferred, whether in case of collaterals or an absolute sale, so that a creditor who has fixed no liens

on it before cannot appropriate it to his debt and override the title of the purchaser who has, in good faith, obtained a regular assignment of the certificate of stock under a valid contract between himself and the owner.

The above conclusion will serve to guide counsel in drawing the decree in this case, as the date of levies will fix the priorities of the parties respectively.

The case of the assumed transfer of stock to Mr. Washburn presents another question. The facts are as stated in his answer and an agreement, that before filing some of the bills, the precise time not necessary to be shown, Richards assigned two certificates of shares of stock of considerable amount to Washburn, Washburn agreeing to furnish Richards a certain sum of money, or rather to pay the same for his benefit. It is also admitted that he has not advanced any money on said shares of stock. It amounts only to this, Washburn agreed with Richards to advance certain money—how much is not shown—for his benefit, and the stock was assigned to him as security when this was done. Not having done so, nor even, as far as we can see, contracted any liability to any third party on the faith of this stock, we do not see how he can claim as against creditors of Richards, or even against Richards himself, to hold the certificates. The contract has not been completed so as to fix his right, and he holds the stock simply as a volunteer, liable to the attaching creditor so far as he is concerned. His right was to accrue when the money was advanced.

It was a contract for a security on a contingency that has not occurred.

The cost as between Cornick and the Iron Company, of filing his bill, will be paid two-thirds by the company, one-third out of the fund. The costs of the other creditors appropriating the fund to their debts will be paid out of the fund arising from sale. A decree will be drawn in accord with this opinion.

McFARLAND, J., delivered the following dissenting opinion:

It is not my purpose to enter into a full discussion of the question involved in these causes, but in view of the fact that the question is unsettled in this State, and of the first importance, I deem it not improper to state briefly my conclusions.

It is important that we adopt rules in regard to the transfer of stocks as near in accord with the rules generally prevailing in this country as we can consistently with such positive enactments as our own Legislature has adopted, so as to place stocks in our incorporated companies as near as possible upon a like footing with others in the general stock markets. Upon questions of this character general uniformity is desirable, though often not attainable.

By our statutes the officers of the corporation are required to keep stock books, which shall show the names of the stockholders and the stock owned by them, and make the proper entries showing the transfer of stock. These books are open to the inspection of any one applying, although the corporation be

strictly a private one, and the stock is made subject to levy and sale by execution, the officers of the corporation in such case being required to make the entry showing the transfer in pursuance of the execution sale. How far do these provisions charge the general principles of law upon the subject? These acts do not in terms say that all transfers of stock not entered upon the books of the company shall be void as to creditors, and therefore I am of opinion that they should not be construed as having that effect. To so hold would prevent the transfer of stocks as collateral security, for it is doubtful whether the assignee in such case has the right to have the stock transferred to him upon the books of the company, and if he do so, the result is that the original stockholder is released and the assignee becomes liable as a stockholder in favor of creditors. *Germania National Bank* v. *Case, Receiver*, 96 U. S. R. But the transfer is not in all respects complete so as to constitute the assignee a member of the corporation, and entitled to act as such in stockholders' elections or otherwise, until the transfer be properly entered upon the stock books. The assignee, however, may acquire a right and beneficial interest in the stock, although the transfer be not thus complete. A transfer of the stock by assignment and delivery of the certificate or other means evidencing the contract ought to be good between the parties so as to give the assignee the right as between them. The question then recurs, can such transfer be made effectual as to creditors, and if so, whether notice of the assignment is neces-

sary to perfect the assignee's right? We have, in this State, adopted a rule upon the subject at variance with the weight of American authority, but in accord with the English rule, that is to say, an assignment of a mere chose in action (that is other than negotiable or assignable paper) is not complete in itself so as to vest the title absolutely in the assignee until notice of the assignment to the debtor, and this not only as regards the debtor himself, but likewise as to third parties who may acquire rights. The leading case on this subject is *Clodfelter* v. *Cox*, 1 Sneed, 330. The question is whether the assignment of stocks stand upon this ground, or does a different rule apply? In some respects stocks resemble ordinary choses in action, in other respects they are unquestionably different, and *sui generis*. They are not in the nature of debts against the corporation. The corporation is not in the attitude of debtor to the stockholder, and notice of the assignment given to the corporation is not in all respects identical in its purposes and effect to notice given to a debtor of an assignment of a debt due from him. Still, certificates of stock are not negotiable, and their assignment, as we have seen, does not vest the assignee with an absolute title so as to constitute him without more a member of the corporation with the full rights of a stockholder. It is, therefore, an incomplete assignment or transfer, and it is in some respects in the nature of an ordinary chose in action. That is to say, while it is personal property it is not a chattel capable of actual manual delivery from one person to another, it is a mere

Cornick *v.* Richards.

right, incorporeal in its nature. It is not a title to any part of the property of the corporation, but a mere right growing out of the organization. The certificate of stock, it is true, is legitimate evidence of the right, but so also is a certified transcript of a judgment at law evidence of the right of the plaintiff in the judgment. A duly certified copy of a will would be legitimate evidence of a legacy, and other instances might be given of similar papers which are conceded to be legitimate evidence of mere choses in action, but their transfer does not vest the assignee, without more, with a perfect right to the thing assigned. As has been said, negotiable paper, or paper assignable so as to authorize the assignee to sue and recover in his own name, stands upon a different footing; as to these the assignment or transfer of the paper is complete in itself. To which class shall certificates of stock belong? It is very obvious that in these States which have not adopted the English rule, the question is wholly different, as the transfer is complete in itself, even conceding it to stand as other mere choses in action, for no notice is necessary in any such cases. But as we have adopted the English rule, shall we apply it to transfer of stock, or shall we place them upon the footing of negotiable or assignable paper, or shall we, while admitting that they do not belong to this class, make them an exception to the general rule requiring notice, and adopt a rule applicable to stocks alone growing out of the peculiar character of these securities? We have no positive legislation in terms adopting either course, and the

difference between stocks and other ordinary choses in action are such that a distinction might be made as to their transfer, and a different rule adopted, founded upon the difference in the nature of the property, but looking to the spirit of our legislation as well as the inconvenience of adopting too many exceptions to general rules, I think it best to make no exception, and apply the rule of *Clodfelter* v. *Cox* to this as well as other choses in action. While our acts do not in terms declare all transfer of stock not entered upon the books void as to creditors, still it is manifest that the rights of creditors were had in view first, the stock books, although the corporation be private, are required to be kept open to the inspection of any one applying. This may have been intended to afford the public dealing with the corporation the opportunity to inform themselves of its solvency and condition, but it is also probable that it was intended to give to creditors an opportunity by this means to ascertain whether or not his debtor owns stock. But in addition to this our legislation is, upon this point, positive, that is, the stock is subject to levy and sale by execution. This is a radical innovation upon the rule generally applicable in such cases, for without this positive legislative act a mere right or chose of this character could not be subject to levy and sale by execution. Now, to make the transfer of stock by secret assignment and delivery of the certificate without more, absolutely perfect and complete, would, in a great measure, if not entirely, defeat the right of the creditor to reach it by execution; for it would be

most difficult, if not impossible, to find the stock, and the levy and sale would be generally delusive, and lead to other complications and litigation. It is true that these difficulties would not be altogether obviated by mere notice to the corporation. The corporation not having any special interest in the transfer, and there being no positive law requiring the officers to keep a record of such notices, it might not always be a protection to others, or enable the debtor to know to whom the stock belonged. It is further true that notice to the corporation is not necessary to protect it as in case of a debtor, or at least not for the same reason, but such notice would be a good excuse for its failing or refusing to transfer the stock to a subsequent assignee, or make the corporation liable for an unauthorized transfer, and it would also afford some means, imperfect though it be, to the creditor by which to ascertain if his debtor has transferred his stock. and again, it is apparent that in cases of ordinary choses in action, notice to the debtor is not always a protection to subsequent assignees or attaching creditors, it simply furnishes a certain rule by which their rights are to be determined. Further, having adopted the English rule, it is better to follow it out to its legitimate results upon the reasons upon which the rule is founded, that is, in case of the transfer of rights of this character, where actual possession cannot accompany the transfer as evidence of the ownership, such rules ought to be adopted as will require the assignee to go as far toward asserting and exercising his right as the nature of the property is susceptible of.

Cornick v. Richards.

That is, in case of an ordinary chose in action, notify the debtor, or where an equity is assigned, notify the trustee, or in a case of this character notify the corporation, through whom the right is to come. In other words, the reason of the rule grows largely out of the nature of the property, or right to be transferred; that is to say, it is not a chattel capable of delivery as such, and in this respect stocks are identical in their nature and character with ordinary choses in action, to which the rule is conceded to apply. It appears that where the English rule has been adopted by other States, they have applied it to stocks.

I concede the importance of making the transfer of such securities as free as possible consistent with the spirit of our own laws, especially in view of the large traffic carried on upon this basis in the large money centres and stock markets, and if we look alone to the policy of encouraging the trade and commerce based upon these securities, and removing all obstacles in the way of such transfers, and conforming to the rules of the stock-jobbing commercial world, then it is manifest that these ends would be best accomplished by making the transfer and assignment of the certificate complete in itself, not only between the parties, but as to all the world. But on the other hand it seems to me that such a rule would in effect render nugatory the positive provision of our statute makidg stocks subject to levy and sale under execution. And to this provision of our statute we must give effect. We should not adopt a construction that practically renders it nugatory. But for the fact that we

3—VOL. 3.

have in this State adopted the rule laid down in the case of *Clodfelter* v. *Cox*, and the fact that our statutes make stocks subject to levy and sale by execution, I should concur in the opinion of the majority as the better view of the question, and more in accord with the rules prevailing elsewhere in the United States, but for the reasons stated I am constrained to dissent.

COOPER, J., delivered the following dissenting opinion.

This case involves the relative rights of an assignee, by purchase or as collateral security, of stock in a corporation, and of the attaching and execution creditors of the assignor, who have levied on the stock.

Stock in a corporation, the property of an individual stockholder, is in the nature of a chose in action. *Union Bank* v. *State*, 9 Yer., 500; *McLaughlin* v. *Chadwell*, 7 Heis., 408; *United States* v. *Cutts*, 1 Sumn., 145; *Rex* v. *Capper*, 5 Price, 217; *Erwin* v. *Oldham*, 6 Yer., 185. A certificate of stock is only evidence of the ownership of the shares mentioned therein. *Shropshire Union Ry. Co.* v. *The Queen*, L. R. 7 H. L., 509; *Mechanics Bank* v. *N. Y. & N. H. R. Co.*, 13 N. Y., 627. Neither its assignment nor the assignment of the stock itself verbally, or in writing not on the books of the company, although it may be a valid sale, passes the legal title, but only an equity which, however, like the right acquired by the assignment of a chose in action proper, will be recognized and sustained both at law and in equity. *Mount Holly Co.* v. *Ferree*, 2 C. E. Green, 117; *Bank*

*of Utica* v. *Smalley,* 2 Cow., 770. Such stock is now, by statute, declared to be personal property, and leviable by execution and attachment. Code, secs. 1487, 3097.

In this State we have adopted the English rule that to perfect the right of an assignee of a chose in action, the title to which does not pass by delivery, as against a subsequent assignee or creditor of the assignor, notice must be given to the debtor. *Clodfelter* v. *Cox,* 1 Sneed, 339; *Catron* v. *Cross,* 3 Heis., 584; *Allen* v. *Bain,* 2 Head, 108; *Carrigan* v. *Leatherwood,* 3 Leg. Rep., 137. The principle upon which these decisions rest is, that the assignee must do some act in reference to such species of property which will be equivalent to the transfer of possession of personal property, the object in the requirement being to protect innocent third persons, and, it may be added, to secure the rights of creditors. The rule has been extended by analogy to assignments of equitable interests in estates, real or personal. *Foster* v. *Cockerell,* 9 Bligh, 332. And to assignments of stock in a corporation or joint stock company. *Martin* v. *Sedgwick,* 9 Beav., 333; *Union Bank of Manchester ex parte,* L. R., 12 Eq., 354; *Pinkerton* v. *Manchester etc. R. Co.,* 42 N. H., 424; *Sabin* v. *Bank of Woodstock,* 21 Vt., 353; *Shipman* v. *Ætna Ins. Co.,* 29 Conn., 245.

The practical wisdom of this rule commends itself to our good sense, is in strict accord with the principles of our registration laws, and seems absolutely essential to the rights of execution and attaching creditors under our Code. If the rule were otherwise,

an execution would lead to litigation, not satisfaction. The law would keep the word of promise to the ear, and break it to the hope.