[Filed April 11, 1887.]

## JAMES P. McBEE, Respondent, v. C. CEASAR et al., Appellants.

Bailment—Right of Depositor.—The deposit of wheat in a warehouse, which has been mingled with the wheat of other persons in a common mass, is a bailment, and the depositor does not lose his right thereby to reclaim it.

Damages for Conversion. — Where a warehouseman ships wheat to a third party, without the consent of the depositor, such depositor is not estopped from claiming damages for its conversion, unless by acquiescing in the acts of the warehouseman he has misled such third party.

Appellate Court, Province of.—It is not the business of an appellate court on a bill of exceptions to judge of the quantum of proof, or to correct errors of a jury.

Bill of Lading. — A bill of lading is not to be regarded as a contract in writing, but as an admission on the part of the consignor as to his purpose at the time of making the shipment, and such admission is subject to be rebutted.

Notice, Implied.—The fact that a person stores wheat in a warehouse, with knowledge that it is a custom to ship the wheat from the warehouse at a certain season of the year, is not sufficient to impute knowledge and acquiescence upon his part that his wheat would be shipped, so as to create an estoppel against him.

Appeal from Multnomah County.　　Affirmed.

Facts are stated in the opinion of the court.

*Williams, Ach & Wood,* for Appellants.

1. The court erred in allowing witness, T. J. Blair, to testify that the wheat was shipped to defendants. It is a presumption of law that the ordinary course of business was followed, and the shipping receipts were the proper evidence of the shipment. (*Young* v. *Miles,* 20 Wis. 646; Code, 261.)

2. It was error to allow Blair to testify as to what he wrote defendants without producing the letter or accounting for its absence. (Code, § 681, p. 247; § 749, p. 258.)

3. The court erred in allowing proof of the demand which described the wheat as shipped by the City of Salem, when they had sued for wheat shipped by the steamer McCulley.

4. The court should have instructed the jury, that if plaintiff deposited the wheat in the warehouse with other wheat in an undistinguishable mass, and knew that Blair was selling and shipping wheat from this mass, and if defendants only received about six thousand three hundred bushels out of thirty-seven thousand bushels so deposited, and no part of the wheat was separated or set apart for plaintiff, he cannot recover.

*J. B. Bryson, John Burnett,* and *Watson, Hume & Watson,* for Respondent.

1. There was no evidence of any bill of lading, and in any event, it was competent to establish the fact by parol testimony that defendant got the wheat.

2. The defendants were not misled by the misdescription in the demand.

3. A deposit of wheat in a warehouse in a common bin is not a sale. The depositor has an interest in the common mass equal to the amount of his deposit, subject to a proportionate share of loss, and if all other depositors withdraw the amount of their deposits, the remainder belongs to him absolutely. The facts that other deposits have been made and withdrawn in the mean time does not affect the result. (Wells **on** Replevin, §§ 203,

210; *Kimberly* v. *Patchon*, 19 N. Y. 337; *Sexton* v. *Abbott*, 53 Iowa, 181, 188, 189; *German Bank* v. *Meadow Craft*, 95 Ill. 124; 35 Am. Rep. 137; *Sears* v. *Abrams*, 10 Or. 449; *Young* v. *Miles*, 20 Wis. 615; 23 Wis. 644; *Chase* v. *Washburne*, 1 Ohio St. 244; 59 Am. Dec. 623, n.; Story on Bailments, § 40; *Clarke* v. *Griffith*, 24 N. Y. 595; *Forbes* v. *B. & L. R. R. Co.* 133 Mass. 154.)

4. Respondent was not only required to prove the amount of his own deposit, but those of his assignors. If other depositors had an interest in the mass, it was a matter of defense.

5. The instruction upon the question was correct. (Code, p. 765.)

6. The instruction given by the court as to the effect which ownership by other parties would have upon respondent's rights was correct, when taken with the general instruction that the existence of rights of other parties would not bar the action, but would cut down the amount of respondent's recovery. (Freeman on Cotenancy and Partition, 353, 356, 357; *Hill* v. *Gibbs*, 5 Hill, 56, n. *a*; *Wheelright* v. *De Peyster*, 1 Johns. 471, 486; 6 Johns. 108; 8 Johns. 101; *Thompson* v. *Haskins*, 11 Mass. 419; 1 Chitty on Pleading, 74.)

7. This being an action of trover, it is not necessary to identify the property further than to prove its general character. (*Ramsey* v. *Beezley*, 11 Or. 49; *Budd* v. *Mult. C. Ry. Co.* 12 Or. 276; *Hake* v. *Buell*, 50 Mich. 89.)

8. Variance between proof and pleading is immaterial, unless it has misled the opposite party to his prejudice. (Code, pp. 124, 125, §§ 94, 95; *Began* v. *O'Rielly*, 32 Cal. 11; *Plate* v. *Vegel*, 31 Cal. 383; *Dodd* v. *Denny*, 6 Or. 156; *Hill* v. *Mellon*, 3 Or. 542.)

9. A judgment will not be reversed on account of error which did not prejudice appellant. (*Stewart* v. *Kimball*, 43 Mich. 443; *Eberstein* v. *Kamp*, 37 Mich. 176; *Hollister* v. *Brownthal*, 19 Mich. 163; *Stansell* v. *Leavitt*, 51 Mich. 427, 537.)

Lord, C. J.—This is an action for the conversion of about 6,343 bushels of wheat alleged to have been deposited in the

warehouse of T. Blair, at Booneville, and subsequently, in the year 1885, shipped in the steamer McCully and delivered to the defendants.  The action originated in this state of facts: During the years 1883 and 1884, the plaintiff and other persons who have assigned their claims to him, deposited their wheat in the said warehouse, taking what are known as "weighing checks," for each load as delivered, and after the deposits for the season were complete, regular warehouse receipts for the whole amount of wheat deposited were given to them.  The amount so deposited is the amount above alleged.  None of said wheat deposited by the plaintiff and his assignors was ever drawn out by him or them, but about the 1st of February, 1885, all the wheat remaining in the warehouse was shipped to the defendant at Portland. Besides these parties, others were depositing wheat in said warehouse, which was mingled with the wheat deposited as stated in common bins.  The defendants, after denying the allegations of the complaint, affirmatively set up that from time to time they received wheat from Blair, and advanced money to him, and that at the close of the transactions, Blair owed them $5,795.43, and that they had in their hands 6,639 bushels of wheat, upon which they claimed a lien for said advances, and also for charges and expenses.  The trial resulted in a verdict for the plaintiff, and judgment having been entered in accordance therewith, the defendants appeal.  All the objections reserved and assigned as error are presented in the bill of exceptions.  It is first objected that it was error to allow Blair to testify that the wheat in question was consigned to the defendants.  The specification of error was that the only proper proof of this fact was a bill of lading. The evidence discloses that there was no evidence of any bill of lading, or other writing showing the consignment to the defendants.  The material fact for the plaintiff to establish was that the defendants received the wheat.  The plaintiff had nothing to do with any agreement which might have existed between Blair and the defendants, nor was he bound to produce the evidence which may have existed between them to fix their liability to each other. As between them, a bill of lading is not to be regarded as a contract in writing, but merely as an admission on the part of the

consignor as to his purpose at the time of making the shipment, and such admission is subject to be rebutted. The fact that the wheat was deposited with Blair is not contradicted, and he testified that it was shipped to the defendants. This was evidence tending to prove the fact in issue, and was competent for that purpose, and if the defendants had any evidence to rebut it, they could have submitted it. We do not think there was any error in the ruling excepted to, nor to the succeeding assignment of error for a like reason.

*Mistake in the demand.* It is next objected that there was a mistake in the written demand as to the name of the boat in which the wheat was carried. The demand was made by Mr. J. F. Watson, and the conversation which took place at that time shows that the defendants knew and understood what wheat was demanded. In a word, that there was no mistake as to the property involved in the action, and therefore the mistake alleged could not prejudice the defendants.　•

*Bailment.* The next assignment of error presents the question as to the effect of mingling wheat of several depositors in common bins of a public warehouse. It has been held by this court that such a deposit is a bailment, and that the depositor does not lose his right to reclaim the wheat so deposited from the common mass. It was admitted by the counsel for the appellant that the later authorities were to this effect, and when his attention was called to a late decision of this court, which involved the determination of a like principle, he abandoned this exception. The record, however, discloses that this assignment was the strong point on which the appellant relied to reverse the judgment, and there can be no doubt, if the position for which he contended could have been sustained, it would have been fatal to the judgment which the plaintiff obtained. But the necessity for abandoning it — the adverse decision referred to — renders some of the other assignments of error which are coupled with the theory unimportant, and we shall, therefore, only notice such of the other assignments as do not include these, and which counsel deemed material in producing an incorrect result.

*Respondents not chargeable with notice of Blair's customs.* It

is contended that the court below erred in instructing the jury that "there is no evidence for the jury to consider that the plaintiff or any of his assignors ever authorized Blair to deliver any of the wheat described in the complaint to the defendants." The transcript contains all the evidence; and that part of it which, it is claimed, tends to show such authority, is based on Blair's testimony that he had been accustomed to ship away the wheat remaining in the warehouse at Booneville before low water came, which, taken in connection with the fact that during that time plaintiff and his assignors had been storing wheat with him, carries the inference that such depositors did not contemplate that their wheat would lie in that warehouse all summer. In other words, it is claimed upon this state of facts that unless the plaintiff and his assignors withdrew their wheat deposited in that warehouse before low water came, they must have known it would be shipped, and consequently acquiesced in it, which was equivalent to such authorization. It is insisted, therefore, there was evidence on this point which the court erred in excluding from the consideration of the jury. The fact that the plaintiff and his assignors had been storing wheat with Blair in the Booneville warehouse, taken in connection with the fact that he had been in the habit of shipping wheat from this warehouse before low water came, does not warrant the inference that the plaintiff or his assignors knew it, much less acquiesced in or authorized its consignment and sale. There is no evidence to show that the plaintiff or his assignors knew that Blair was accustomed to ship wheat from this warehouse before low water came. The vice of the argument lies in assuming that the fact of storage of the wheat in that warehouse charges the plaintiff and the assignors with knowledge of the other fact, that it was the custom of Blair to ship the wheat from the warehouse before low water came. The two facts do not have such necessary connection with each other as to justify such inference, without the aid of further proof.

*Estoppel.* Nor do we think there was any error committed in the instruction of the court upon the question of estoppel. It is only such knowledge of the acts of Blair as indicated an inten-

tional acquiescence, and by such conduct led the defendants to believe that the shipment of the wheat was rightful; that, the court instructed the jury, operated as an estoppel. As a matter of law the instruction is correct, although the facts are extremely meager, if there are any upon which to predicate an instruction of estoppel. There was no error in the language in which it was given, and under the circumstances as disclosed by the record, it was favorable to the defendants. It was earnestly urged that the verdict in this case worked an injustice. If such was the fact, it arose out of matter which it was the province of the jury to decide, and not out of any error of law which it is the province of this court to correct. It is not the business of a court, "on a bill of exceptions, to judge of the *quantum* of the proof, or to correct the errors of the jury, and make a bad precedent because the case is a hard one." (Gibson, C. J., *Sidwell* v. *Evans*, 1 Pen. & W. 385.) After a careful examination of the record we are constrained to affirm the judgment, and it is so ordered.