GEORGE W. HALL *vs.* GEORGE A. PILLSBURY and others.

February 18, 1890.

| 43 | 33 |
| 78 | 126 |
| a78 | 4▼8 |
| a78 | 479 |
| 43 | 33 |
| a79 | 278 |

Grain Warehouseman—Commingled Grain—Rights of Receipt-Holders.—A deposit of grain for storage is a bailment, the title remaining in the depositor, so that he is deemed to be the owner of grain in the warehouse to the amount of his deposit, although the identical grain he deposited has been removed, and other grain, of like kind and quality, substituted in its stead.

Same—Receipt-Holders Tenants in Common.—The holders of receipts for grain so deposited, of the same kind and quality, are tenants in common in the mass of grain of that kind and quality in the warehouse; the interest of each being limited to the amount called for by his receipt.

Same — Warehouseman, when also Tenant in Common.—The warehouseman may also be tenant in common with them in such mass, as where he puts his own grain in the warehouse or purchases from a depositor.   His interest in the mass is limited to the excess above what is necessary to meet his outstanding receipts.

Same—Sale by Warehouseman—When Lawful—When a Conversion. He may remove, and dispose of as his own, such excess.   If he sell as his own any grain beyond such excess without express consent of the depositors, his sale passes no title, and the owners, the depositors, may follow the grain into the hands of the purchaser, and recover of him for a conversion.

Appeal by defendants, partners as C. A. Pillsbury & Co., from an order of the district court for Hennepin county, *Hicks*, J., presiding, overruling their demurrer to the complaint.

*Ralph Whelan*, for appellants.

*B. S. Lewis*, for respondent.

GILFILLAN, C. J.    Appeal from an order overruling a demurrer to the complaint.    From the complaint it appears, in brief, that the firm of G. W. Ehle & Co. operated and conducted, for the storage of grain, a grain warehouse at Stewart, in this state.    Fifteen different owners of grain, plaintiff being one of them, deposited at different times with said Ehle & Co., in said warehouse, for storage, different quantities of wheat, the aggregate amount so deposited being 2,647 35-60 bushels, and upon each of such deposits each depositor received from Ehle & Co. the usual warehouse or elevator receipt for the amount so deposited, with, however, this clause, (unusual, we think,) that if, for any reason, it should become necessary to remove such grain, Ehle & Co. reserved the right to deliver the grain from any other warehouse operated by them, etc.    As the mere desire on the part of Ehle & Co. to sell the grain so deposited could not be regarded as a reason for removal under this clause, and no reason *of necessity* for its removal appears, we need not further consider that clause.    None of the receipts so issued were redeemed.    Ehle & Co., without the knowledge or consent of the receipt-holders, sold and shipped to defendants, and they converted to their own use, so much of the wheat so deposited that there was left in the warehouse, to meet the outstanding receipts, amounting to 2,647 35-60, only 1,144 bushels.    This latter quantity was then distributed *pro rata* to the outstanding receipts.    All the receipts other than those received by him have been sold to plaintiff, and he brings the action to recover for a conversion of the wheat so sold and shipped to defendants.

It being a general rule of law that a purchaser of personal property gets ordinarily no better title than his vendor has, it will be necessary to consider what was the right or title of Ehle & Co. in or to the wheat; that is, to consider what are the rights, in respect to grain stored in a general grain warehouse, of the depositor and depositee. This must be determined by the statute regulating such warehouses

and deposits, which is found in Gen. St. 1878, c. 124, §§ 13-20, inclusive. In several cases we have considered some of the features of that statute, but, although in *Leuthold* v. *Fairchild*, 35 Minn. 99, (27 N. W. Rep. 503, 28 N. W. Rep. 218,) we assumed, rather than fully determined, that a warehouseman who, without the consent of the depositors, disposes of so much of the grain deposited with him that there is not enough left in the warehouse to meet his receipts outstanding, is liable to the holders of the receipts as for a conversion of their property, the question of the respective rights and relations of the depositor and depositee in such cases, and of the rights of a purchaser from the depositee, has never before been squarely brought before us.

The statute was passed for the better protection of depositors in such general grain warehouses. The evils to be cured were those which were supposed to follow the prior rule of law,—the rule of the common law. That rule was that where a deposit was made of grain or other like property, with the expectation that it would be commingled in a common mass of similar kind, deposited by different persons, so that its identity would necessarily be lost, and the undertaking of the depositee was not to redeliver the identical property deposited, but to deliver, in lieu thereof, an equal amount of the same kind of property, the title to the property deposited passed to the depositee. The deposit had the effect of a sale. The statute changes this rule, and provides (Gen. St. 1878, c. 124, § 13) that "such delivery shall in all things be deemed and treated as a bailment, and not as a sale." Of course, it cannot be understood from this that the depositor's title to the identical grain remains. The legislature must be taken to have had in view the way in which the business of such warehouses is, and of necessity must be, conducted. They are constantly receiving deposits of grain, and issuing receipts for it, and as constantly taking up outstanding receipts, and removing the amounts of grain called for by them, so that perhaps the same identical grain may not remain in the warehouse a week, though the amount in store is not diminished. The declaration that the delivery shall be deemed and treated as a bailment must be taken as meaning that the depos-

itor shall be deemed to be the owner of, and to have on bailment in the warehouse, the amount of grain that he deposits, although its identity may have been lost by commingling with other, the like kind of grain, and although not a kernel of the identical grain deposited still remains. As fast as grain is removed, and other grain is put into the common mass, the new grain takes the place of that originally deposited, and is appropriated to the contract of bailment, so as to become the property of the depositor. *Nat. Exchange Bank* v. *Wilder*, 34 Minn. 149, (24 N. W. Rep. 699.)

The grain, of like kind and quality, of different depositors, not being kept separate, but put into a common mass, and each depositor owning the amount called for by his receipt, the different owners owning the entire mass, they own the mass as tenants in common; the interest of each being measured by the amount called for by his receipt. So, if the owner of the warehouse put his own grain into the mass, he becomes a tenant in common of the entire body of the grain with the other owners. Ordinarily, the partition is to be made by the warehouseman, who, when a receipt is presented, and the grain it calls for demanded, and the conditions of the right to a delivery of it complied with, delivers to the holder, as his share of the entire body of grain under that receipt, the amount that it calls for. If the receipt-holder is put to his action of replevin, the sheriff makes the separation. Gen. St. 1878, *c.* 124, § 16. But, while the interest of the depositor in the mass is measured by the amount he deposits, and mentioned in his receipt, the interest of the warehouseman, by reason of putting his own grain into the mass, is not necessarily measured by what he puts in; for if, from any cause for which he is responsible, as by his taking grain out from the mass, the whole amount is diminished below what is required to fill the outstanding receipts, what he puts in is appropriated at once, so far as may be necessary, to the receipts, and becomes at once the property of the holders. Thus, if there is a shortage thus arising of 200 bushels, and he puts in 400 bushels of his own, his interest in the mass after that is equal to 200 bushels, just the excess above what is required to fill the receipts. That amount, and no more, he has a right to take out and

sell. It is true, it may be the practice—probably is—of warehouse-men to take out and dispose of grain without reference to the relation which the amount in warehouse bears to the amount of the outstanding receipts. In other words, it may be their practice to dispose of the depositors' property. When this is done with the consent (such as the statute requires) of the depositors, it is, of course, rightfully done; and in that case a sale by the warehouseman would pass the title. No presumption of consent on the part of the depositor could arise from the existence, however general, of such a practice. Such a practice is made unlawful. Section 18 of the statute provides: "No person receiving or holding grain in store shall sell, or otherwise dispose of, or deliver out of the storehouse or warehouse where such grain is held or stored, the same, or any part thereof, without the *express authority* of the owner of such grain, *and the return of the receipt* given for the same, except as herein provided."

If the warehouseman be also a dealer in grain, his right to dispose of, as his own, the grain in the warehouse, is limited to that which belongs to him, which he has purchased and put in, or, when deposited by others, which he has purchased from them, and to the excess above what is required to meet his outstanding receipts. The statute clearly enacts that he shall not sell or otherwise dispose of grain on deposit. Its purpose is to provide that the grain shall remain in the warehouse where deposited, to meet the call of the owner. Ehle & Co. were not the owners of, they had no title to, the grain which they sold or assumed to sell to the defendants. It belonged to the holders of the receipts.

Much argument has been expended to show the inconvenience to commerce in grain if in such cases the owner of the grain may, notwithstanding a wrongful sale by the warehouseman, follow the grain into the hands of the purchaser. As touching the matter of convenience, the argument has much force. It might tend greatly to facilitate traffic in grain if we had, in respect to it, such a rule as in England pertains to property sold in markets overt. But there is no such rule in this country. The general rule is that an owner of personal property cannot be deprived of his right to it through the un-

authorized act of another.    That rule applies as well to grain or other property on deposit for the purpose of storing as to property in any other situation.

Order affirmed.