## OSCAR LARSON v. NATIONAL SURETY COMPANY AND ANOTHER.[1]

June 10, 1927.

Nos. 25,965, 25,981.

**When execution and delivery of warehouseman's bond do not bind the surety.**
Two actions for the conversion of stored grain, against different sureties, on separate alleged grain storage bonds required by G. S. 1923, § 5071, to be filed with the railroad and warehouse commission for the benefit of holders of grain storage receipts. *Held*:

(1) Authority of principal to deliver bond, after signed by surety and forwarded to and signed by principal, implied whenever it is fairly and legally inferable from the circumstances that such was the intention of the parties; but the appointment of a receiver in the meantime for principal, because of insolvency, terminates such implied authority.

(2) Bond signed by surety, then forwarded to and signed by principal and filed by principal after appointment of receiver for such principal, does not constitute delivery and execution of bond so that it became effective against surety.

(3) Demand not necessary in action for conversion of stored grain against surety after property of warehouseman is in hands of receiver.

(4) Order of trial court as to appellant Integrity Mutual Casualty Company reversed, and as to appellant National Surety Company affirmed.

Appeal and Error, 4 C. J. p. 1183 n. 37.
Principal and Surety, 32 Cyc. p. 52 n. 56.
Warehousemen, 40 Cyc. p. 440 n. 36.

Two actions in the district court for Cottonwood county by the plaintiff to recover of defendants as sureties on separate bonds of St. John Grain Company. A number of persons having claims similar to that of the plaintiff intervened. The issues were tried before Nelson, J., who found for plaintiff and the interveners. From

[1]Reported in 214 N. W. 507.

an order denying their motion for a new trial defendants appealed. Reversed as to Integrity Mutual Casualty Company and affirmed as to National Surety Company.

*Horace W. Roberts* and *Tifft & Youngdahl*, for appellants.

*Charles A. Flinn, O. J. Finstad, Eli R. Lund, B. D. Grogan, P. S. Redding, J. L. Lobben, Frank Wasgatt,* and *Herbert S. Martin,* for respondents.

QUINN, J.

The St. John Grain Company of Worthington operated a line of six local public grain warehouses in this state. On August 31, 1923, the appellant National Surety Company issued its bond in the sum of $12,000, conditioned as required by G. S. 1923, § 5071, to remain in effect until August 31, 1924. Whereupon the Minnesota railroad and warehouse commission issued a license to such grain company covering the same period of time. On or about July 1, 1924, the warehouse commission requested the grain company to file an additional bond in the sum of $20,000. The grain company then made application to the appellant Integrity Mutual Casualty Company of Chicago for such a bond. On July 8, 1924, that company prepared and signed its bond and forwarded it by mail to the grain company at Worthington where it was received and forwarded to its president, B. P. St. John at Minneapolis, where it was signed by him on behalf of the grain company. On July 12, 1924, the district court of Hennepin county appointed a receiver to take charge of all of the grain company's property and conduct its business under the direction of the court. The receiver immediately qualified and took possession of all of the property of the grain company, including a large quantity of grain at the several warehouses.

This action was commenced by Oscar Larson upon two storage tickets issued to him by the grain company for grain stored, as follows: One ticket dated June 3, 1924, for 2,106 bushels and 12 pounds of No. 2 yellow corn; one dated June 26, 1924, for 1,734 bushels and 2 pounds of No. 3 white oats. The complaint in such action was signed by John C. Benson as the attorney for the plaintiff. A copy of the order appointing the receiver is annexed to and

made a part of the complaint. It authorizes the receiver to take full possession of all the property of the St. John Grain Company and to operate its business, to buy and sell grain, to borrow money, and each and every of the officers, directors, stockholders, agents, employes, custodians and trustees of that company is directed to deliver and turn over to the receiver all of the assets of the corporation of every nature and description. It also enjoins such officers, agents and representatives from in any wise interfering, etc.

[1] It is undisputed that the bond of the Integrity company was filed in the office of the railroad and warehouse commission on July 15, 1924, but it does not appear how it got there. St. John, president of the grain company, testified that he signed the bond on July 11, but that it might have been on the 12th, and that later he handed it to Benson. It is contended on behalf of the Integrity Mutual Casualty Company that such bond, so signed by it, was never delivered to the railroad and warehouse commission for the protection of the storage receipt holders by anyone authorized so to do, and therefore was never executed within the meaning of the law and never became effective for any purpose.

Section 5071, G. S. 1923, provides that all local grain warehousemen, before receiving any grain for storage in any public local warehouse, shall first apply to and secure from the railroad and warehouse commission a grain storage license for such warehouse, and that before any such license is issued to any warehouseman such warehouseman shall file with the commission a bond in such sum as the commission may prescribe, the same to run to the state of Minnesota and be for the benefit of all persons storing grain in such warehouse; that such bond shall be conditioned upon the faithful performance by the public local warehouseman of all the provisions of law relating to the storage of grain and the rules and regulations of the commission relative thereto. By this statute the commission is authorized to require such increases in the amount of such bond from time to time as it may deem necessary for the protection of the storage receipt holders.

[2] Upon the appointment of a receiver on July 12, the grain company ceased to function. It no longer had power to act or to

operate except through the receiver as an agency of the court. The appointment of the receiver terminated the implied authority of the grain company or any of its officers or representatives to deliver the instrument to the railroad and warehouse commission where the statute required it to be placed for the benefit of all persons storing grain with such company. The acts of St. John and of Benson with relation to the affairs of the grain company after the appointment of the receiver were null and amounted to nothing. They were of no legal or binding force or validity. The bond had not been delivered at that time. As stated by Mr. Justice Mitchell in State v. Young, 23 Minn. 551, 560:

"It is almost an elementary principle, laid down in all the books, that a bond is not 'executed' until it is delivered, for delivery is of the essence of a deed. It takes effect only from execution, on delivery, and, until delivery, it is not a contract, and is of no further value than the paper upon which it is written."

The Young case was brought to enforce the official bond of a county treasurer. It was alleged in the complaint that, during the term of office for which the bond was given, the county treasurer received, and failed to account for and pay over according to law, certain taxes levied and collected for state purposes and in violation of the provisions of the statute requiring such bond. The language quoted from the decision in that case applies to the instant case in so far as the issuance of the bond is concerned. Schwab v. Rigby, 38 Minn. 395, 38 N. W. 101; Swedish Am. Nat. Bank v. Germania Bank, 76 Minn. 409, 411, 79 N. W. 399.

It may be said that, as a general rule, authority to the principal to deliver such a bond, after signing, to the depository will be implied whenever it is fairly and legally inferable from all the circumstances that such was the intention of the parties; but no such inference can be drawn from the facts and circumstances in the instant case. The bond was prepared in Chicago and signed by the surety on July 8. It was then forwarded to the principal at Worthington for its signature. It was later signed at Minneapolis and then delivered to the railroad and warehouse commission three days after the prin-

cipal had gone into the hands of a receiver. To hold that the surety ever intended that the grain company, or any of its officers, might deliver the instrument to or file it with the commission after the appointment of a receiver to take charge of its affairs would seem to be worse than preposterous. As to the proposition of the termination of the powers of the corporation by the appointment of a receiver see 8 Fletcher, Cyc. of Corp. pp. 8898, 8900, 8901, 8903, 8925 and 8927; State v. Board of R. R. Commrs. 41 N. J. L. 235; 1 Smith, Receivers, §§ 26, 337. It follows that the bond of the Integrity Mutual Casualty Company was never executed and delivered in accordance with law, and that it never became operative for any purpose because of its nondelivery.

The National Surety Company issued its bond to the grain company for $12,000 on August 31, 1923, to remain in force until August 31, 1924, and the railroad and warehouse commission thereupon issued to the grain company a license covering the same period, all in accordance with the provisions of the statute. The purpose of the bond, as well as its conditions, is to insure the owners of stored grain against loss by reason of the failure of the licensee to perform its duties according to law. The obligation is created and measured by a written contract, the form of which is prescribed by the statute.

On July 12, 1924, a creditor of the grain company brought suit in Hennepin county asking that a receiver be appointed. The grain company answered admitting insolvency and consenting to the appointment of a receiver. On that day a receiver was appointed. He qualified immediately and took over all of the property of the grain company, including a large quantity of grain of the kind described in the storage receipts outstanding against it. Subsequent to the appointment and qualification of the receiver and the taking over of the property of the grain company by him, this action was commenced by one of the holders of storage receipts, issues were joined, and other parties holding storage receipts intervened. Whereupon the court issued an order requiring all holders of such receipts to intervene and assert their claims. A portion of the storage receipt holders filed their claims with the receiver as well. No storage

charges were ever tendered by any holder of a storage receipt and no demand for delivery was ever made by any such holder prior or subsequent to the receivership, except by two ticket holders.

As a general rule, a large part of the grain handled by such warehousemen is not sold in the first instance but is graded and mingled with other grain of like character and quality. The only breach of the obligation under consideration is the conversion of the grain, and the only evidence of such conversion is that a certain agent of the grain company stated that he could not deliver the grain. Under the bond the surety company is obligated to see that the obligor performs its duties. The contract provides that upon the return of the storage receipts and payment or tender of such charges accrued in favor of the warehouseman, the amount, kind and grade of grain will be delivered within the time prescribed by law.

[3] At the time of the commencement of this action the affairs of the grain company were in the hands of a receiver who had taken possession of all of the property of the grain company. The grain company was unable to comply with the terms and conditions of the storage receipts then outstanding against it. Under such circumstances a demand would have been useless. Board of Commrs. v. Irish-American Bank, 68 Minn. 470, 71 N. W. 674; Torgerson v. Quinn-Shepherdson Co. 161 Minn. 380, 201 N. W. 615; State ex rel. v. Inter-State Surety Co. 48 S. D. 57, 201 N. W. 717; State ex rel. v. Daniels, 35 N. D. 5, 159 N. W. 17; Kastner v. Andrews, 49 N. D. 1059, 194 N. W. 824. The only defense urged on behalf of the National Surety Company as to its liability upon its bond is the want of a demand before the commencement of the action. It follows that such surety company is liable to the extent of the amount of its bond, not exceeding however the amount due the storage ticket holders. A considerable amount of property was taken over by the receiver. It does not appear from the record before us what dividends have been or may be paid by the receiver. However, it may be remarked that it goes without saying that whatever amounts are paid by the receiver to the storage receipt holders should be credited in favor of the surety, and that the surety is finally entitled

to subrogation to the rights of the storers. See Northern Trust Co. v. Consolidated Elev. Co. 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510.

[4] It follows that the order of the trial court as to the appellant Integrity Mutual Casualty Company should be reversed, and as to the National Surety Company affirmed. It is so ordered.