STATE ex rel. SOMMERS, et al, Respondents, v. INTER-
STATE SURETY COMPANY, Appellant.

(201 N. W. 717.)

(File No. 5461.    Opinion filed December 31, 1924.)

1. **Warehousemen—Evidence—Receipts Conclusive as to Party Is-
suing Same.**

    Receipt on storage ticket is prima facie evidence of matter
    specified therein, and not only prima facie when issued by a
    warehouseman, but conclusive as to party issuing same, under
    Rev. Code 1919, Secs. 9753; 9759.

2. **Warehousemen—Principal and Surety—Receipts Conclusive as to
Receipt of Grain Shown Thereon.**

    In action against surety on bonds of warehouseman to re-
    cover value of grain stored in its warehouses, that separate
    bonds were given on separate buildings did not necessitate a
    showing which of the bonds covered tickets for grain or which
    building grain was stored in; receipts being conclusive that
    warehouseman received grain, in view of Rev. Code 1919, Secs.
    9753, 9759.

3. **Warehousemen—Evidence—Storage Tickets Admissible Without
Showing Grain was Deposited in Certain Warehouse.**

    In action to recover value of grain stored with warehouse-
    man operating two warehouses, plaintiff's storage tickets were
    admissible in evidence without a showing that grain was de-
    livered and deposited in a certain one of buildings; it being
    warehouseman's duty to designate on storage ticket, if ware-
    houses were separate, and neither it nor its bonded security
    being able to take advantage of its neglect to perform a duty
    that business placed on it.

4. **Action—Conversion—Plaintiff Can Waive and Sue for Money
Had and Received.**

    In conversion, plaintiff can waive the tort and sue for money
    had and received.

5. **Appeal and Error — Presumptions — Findings — Appellate Court
Must Presume Correctness of Lower Court's Findings.**

    Appellate court must presume correctness of lower court's
    findings until its errors are pointed out

6. **Warehousemen — Storage Tickets — Conversion — Storage Ticket
Holders, Through Stockholders of Warehouse Corporation,
May Recover for Conversion.**

    In action to recover value of grain stored with warehouse-
    man, recovery of holders of storage tickets would not be denied
    because they were stockholders in warehouse corporation, where

there was no evidence or finding that they ever took part in or had knowledge of the shipping of grain by warehouseman out of the state and in converting proceeds.

7. **Warehousemen—Principal and Surety—Bondsman Liable for Non-compliance With Statute.**

Rev. Code 1919, Secs. 9753, 9759, relating to duties of warehousemen, define their obligations, and, if conditions are not complied with, bondsman is liable.

8. **Evidence — Elevators — Common Knowledge — Generally Known That Warehouse Business Does not Necessarily Require What is Known as Elevators.**

It is generally known that a warehouse business does not necessarily require what is known as elevators, but that the business is often carried on in buildings or other kinds of storage rooms.

9. **Warehousemen—Principal and Surety—Bonds Chargeable Without Showing in Which Building Grain was Stored.**

Where warehousemen who owned two warehouses procured license and executed two bonds as provided by statute, and by virtue of its authorized license received grain and issued storage tickets for same, and stored it indiscriminately in both buildings, and operated as a single concern, both bonds could be charged for grain received by it without a showing in which building grain was stored; warehousemen having but one single business, and its bonds securing jointly grain deposited with it by ticket holders.

Appeal from Circuit Court, Brown County; Hon. ROBERT D. GARDNER, Judge.

Action by the State of South Dakota on relation of H. J. Sommers and others, against the Interstate Surety Company, a corporation. Judgment for plaintiffs, and defendant appeals. Affirmed.

*Corrigan & Corrigan,* of Aberdeen; and *Sterling, Clark & Grigsby,* of Redfield, for Appellants.

*Williamson, Williamson & Smith,* and *E. B. Harkin,* all of Aberdeen, for Respondents.

DILLON, J. This is an appeal by the defendant from the judgment entered in favor of plaintiff and from the order denying a new trial. This action was instituted by the plaintiff to recover the value of certain grain delivered to and stored with the Richmond Equity Exchange, a corporation, upon bonds executed

by said company and the state, as provided by statute for operating warehouse and storing grain business.

The facts as shown by the record in this case are: The Richmond Equity Exchange owned two buildings or elevators on the right of way of the Minneapolis & St. Louis Railway, standing about 15 rods apart at Richmond, a small town in this state. The company had conducted its business as warehouse in these two buildings as one business or concern. It had but one office which was located in the larger of the two buildings; one set of books; one manager; one scale book; one storage ticket book, containing tickets of a single series. It owned no other elevators, and did business in no other place; stored wheat, oats, barley, flax, and all grain delivered to it in both buildings, and issued tickets therefor from the single series of storage tickets, except at time when either one house or other was full. Wheat and rye were stored in the larger building and oats and flax in the smaller building. The tickets for storage of grain for both buildings were issued from the same storage ticket book without any regard to which building the grain was deposited in.

The application of the Richmond Equity Exchange for warehouse license gives the following: "Capacity (as two houses), 18,000-12,000 bushels." Was bonded for the year commencing August 1, 1920, and ending July 31, 1921, by two bonds of $6,000 each. The conditions of the two bonds were identical in that, "if said Richmond Equity Exchange should faithfully perform its duty as a public warehouseman, and shall faithfully and unreservedly comply with all the laws of the state of South Dakota in relation thereto, then this obligation to be void, otherwise to remain in full force and virtue."

The buildings or warehouses as described in the bonds as warehouses named "Richmond Equity Exchange, having a capacity of 12,000 bushels," and as "Richmond Equity Exchange B, having capacity of 18,000 bushels." During the month of August and the fall of 1920 the 48 storage ticket holders for whom judgment was rendered stored grain with the Richmond Equity Exchange in its buildings at Richmond, S. D., consisting of wheat, oats, barley, rye, and flax, and received storage tickets as set forth in findings. All tickets were issued from the single

storage book, and were of the same series and numbered in consecutive order.

In December, 1920, the Richmond Equity Exchange shipped the grain of the ticket holders, and on January 25, 1921, it was adjudged bankrupt. On February 7, 1921, a trustee was appointed, and the storage tickets were presented to the trustee with claims and demands on February 7, 1921. The trustee sold the grain left on hand, and credits were given therefor, being about 17 per cent. The balance due on the storage ticket exceeding the face of both bonds of defendant, judgment was rendered for $13,-412.27; debt, damage, and interest. The case has been to Supreme Court upon demurrer and demurrer overruled as to the complaint.

The appellant in his brief and argument in this court presented several assignments of error, which we may classify in three parts: (1) Admissibility of evidence. (2) Estoppel from claiming on storage tickets. (3) sufficiency of evidence to sustain findings and judgment.

The first contention as to admissibility of evidence involves a number of storage tickets to which the appellant objects, giving as a reason that no foundation has been laid, and that it was not shown that any grain had been delivered. Appellant also objected to certain evidence, for the reason that it did not show to which warehouse same was delivered. These objections and assignment of errors may all be considered together, as all involve the same question of law.

The appellant contends that, as there were two separate bonds given by the warehouseman on separate buildings, therefore there are two separate and distinct contracts, and that the evidence should show which of the bonds covers the tickets for grain or which building the grain was stored in. Such contention cannot be sustained.

[1, 2] A receipt or a storage ticket is prima facie evidence of the matter specified therein, and, we think, not only prima facie when issued by a warehouseman but conclusive as to the party issuing same under section 9753 of the Code of 1919, which provides:

"No warehouse receipt shall be issued except upon actual delivery of grain into such warehouse."

And Section 9759 states:

"No person doing a grain warehouse or grain elevator business in this state, having issued a receipt for the storage of grain as in this article provided, shall thereafter be permitted to deny that the grain represented thereby is the property of the person to whom such receipt was issued, or his assigns thereof and such receipts shall be deemed and held, so far as the duties, liabilities and obligations of such bailee are concerned, conclusive evidence of the fact that the person to whom the same was issued, or his assigns thereof, is the owner of such grain and is the person entitled to make surrender of such receipt and receive the grain thereby promised to be delivered."

The receipts issued by the Richmond Equity Exchange for grain are conclusive that it received the grain; hence were properly admitted as evidence without showing actual deliveries.

[3]    The appellant further contends that the storage tickets must show that the grain was delivered and deposited in a certain one of the buildings before same could be admited as evidence to prove to the court which bond was affected. We think this contention cannot be sustained. The fact being within the knowledge of the warehouseman, it would be his duty under the law to designate on the storage ticket if these buildings were separate warehouses or elevators, and the company issuing the tickets or its bonded security could not take any advantage of its neglect to perform a duty that the business placed upon it, and, if there was any such designation of building, required in this case, the burden of proof would rest upon the defendants rather than upon the ticket holder. Farmer Elevator Co. of Westport v. Quinn-Shepherdson Co. (S. D.) 199 N. W. 201; Marshall v. Andrews et al, 8 N. D. 364, 79 N. W. 851.

[4, 5]    The contention of the appellant is that certain evidence of the value of the grain in December, 1920, at the time of the shipment of the grain outside of the state, and also of the value at the time the Equity Exchange voluntarily became a bankrupt and the trustee in bankruptcy took possession of all its property, should not have been admitted. The appellant does not point out or claim in his brief that the only evidence of value was that of December, 1920, and February, 1921, and that no other evidence was considered by the court in deter-

mining the value. If the court determined the value from other proper evidence, then this evidence might be immaterial. We do not think it necessary to determine in this case. Neither the warehouseman by voluntary bankruptcy and transfer of all property to trustee nor demands on trustee were a conversion of property at that time. In cases of conversion, the claimant or plaintiff can waive the tort and sue for money had and received. This court must presume the correctness of the lower court's findings until its errors are pointed out.

[6] The appellant claims that certain parties should not recover upon their storage tickets for the reason that they are stockholders and were parties to the shipping of the grain out of the state and in converting the proceeds. There is no evidence or finding of the court pointing out that the stockholders named ever took part in or counselled, solicited, consented, authorized, or had any knowledge of any attempt to cheat or defraud in this case, and no evidence has been cited that would deprive them of the right of recovery on their storage tickets; hence the contention of appellant must be denied.

The last proposition presented by the appellant is on the sufficiency of the evidence to sustain findings and judgment. We have already considered some of the questions involved in this proposition, and there exists but one other necessary to consider in determining this assignment of error, and this is as to the objection of appellant that there was no evidence showing any liability upon the bond issued for warehouse B. There was no evidence showing what grain, if any, was delivered to or received by the elevator designated as A, or what portion of grain was received by B. This question involves the consideration of the two bonds made and executed by the appellant. The evidence in this case shows that Richmond Equity Exchange on July 27, 1920, made application for license to do business as warehouseman. In its application it alleged:

"Name and location of warehouse or elevator—Richmond Equity Exchange, Richmond, S. D. Capacity of same in bushels— two houses 18,000 and 12,000 bushels."

Procured license and executed two bonds in the sum of $6,000, each as provided by statute, and by virtue of its authorized

license, received the grain alleged and issued the storage tickets for same; had no other place of business; stored the grain indiscriminately in both buildings; it had one manager; one set of books; one scale book; one storage ticket of a single series; did no other business; the larger building generally used for wheat and rye, and the smaller for oats and flax, unless one was full, then the other was used. Storage tickets for all kinds of grain placed in both buildings were issued from the single storage ticket book. There were no designations on the storage tickets as to the building used for the storage of that particular grain.

The question raised by appellant under these facts is: Can either or both bonds be charged for grain received by the warehouseman without a showing which building the grain was stored in? The bonds in question are identical in parties, date, amount, terms, and conditions, except one is designated as A and the other B. Each bond followed the statute in conditions and requirement:

"If said Richmond Equity Exchange shall faithfully perform its duty as a public warehouseman, and shall faithfully and unreservedly comply with all the laws of the state of South Dakota in relation thereto, then this obligation will be void, otherwise to remain in full force and virtue."

The duties required of a warehouseman are set forth in Section 9753, Code of 1919, and in part as follows:

"All warehouse receipts issued for grain received shall be consecutively numbered, and no two receipts bearing the same number and series shall be issued during the same year. No warehouse receipt shall be issued except upon actual delivery of grain into such warehouse. * * *"

Section 9759 of same Code provides in part:

"* * * And such receipts shall be deemed and held, so far as the duties, liabilities and obligations of such bailee are concerned, conclusive evidence of the fact that the person to whom the same was issued, or his assigns thereof, is the owner of such grain. * * *"

[7] The above sections define the obligations of the warehouseman, and, if the conditions are not complied with, the bondsman is liable. Some of these conditions are that the bailee

shall issue receipts and be consecutively numbered, and no two receipts shall bear the same number and series.

[8]    We think it was the duty of the bailee, if he claimed the right to operate two different warehouses, A and B, to designate in the receipt and series the one involved. It is generally known that a warehouse business does not necessarily require what is known as elevators, but that the business is often carried on in buildings or other kinds of storage rooms as bins and sheds. At times the grain is loaded into cars standing on the railroad tracks.

If the bailee in this case were operating under different and separate elevators as separate businesses, then it was its duty to distinguish same in its receipts and not the duty of the depositors to see that the grain was delivered to and held in a certain specific building, owned or operated by the warehouseman issuing the receipt. The warehouseman cannot throw such responsibility on to the receipt holder, and under the law of this state it would be the duty of appellant to show which bond covered the particular receipts. We are forced to take the view in this case that the word warehouse refers to the business of Richmond Equity Exchange, at Richmond, S. D.

It appears reasonable that the Legislature intended to license the parties doing business as warehousemen, and did not intend to confine license to certain buildings; that the series of storage tickets issued measured the liability of the bonds. Holding otherwise would be to require a bond for every building, shed, car, or place where grain might be stored, and would require a separate series and numbering for each place, notwithstanding the business was done by one warehouseman.

[9]    The evidence shows that part of the grain was delivered in A, part in B, mingled together. Both obligations on the bond became liable under this theory of the case; hence we conclude that the Richmond Equity Exchange had one single business of warehouseman at Richmond, S. D., and that its two bonds secured jointly the grain deposited with it by the ticket holders.

The order denying new trial and the entering of judgment is affirmed.

SHERWOOD, P. J., not sitting.