STATE ex rel VOJTA, et al, Respondents, v. DEIBERT, et al, Appellants.

(240 N. W. 332.)

(File No. 7064. Opinion filed January 25, 1932.)

*Hepperle & Fuller,* of Aberdeen, for Appellants.
*Morrison & Skaug,* of Mobridge, for Respondent.

RUDOLPH, J. The appellants are sureties on a warehouse-man's bond wherein the defendant Joe Asenbauer is principal. The material facts are without dispute. The defendant Joe Asenbauer was conducting a grain elevator at Herreid, S. D., during the years 1925 and 1926. On July 27, 1925, Asenbauer was granted a certificate by the state railroad commission authorizing him to conduct the business of a public warehouseman. Asenbauer, however, never filed a bond under the provisions of section 9751, Rev. Code 1919, until the 20th day of April, 1926. On the 20th day of April, 1926, he filed a bond with the railroad commission, which was approved by the commission, and thereafter on the 4th day of May, 1926, there was issued to Asenbauer a certificate authorizing him to store grain. The certificates above mentioned to conduct a warehouse and store grain both expired on July 31, 1926, and thereafter on the 12th day of August, 1926, the board of railway commissioners issued to Asenbauer another certificate whereby he was authorized to carry on and conduct the business of a public warehouseman during the year commencing August 1, 1926, and ending July 31, 1927. Asenbauer also filed with the railroad commission a second bond which was approved by the commission on the 7th day of August, 1926, and on the 12th day of August, 1926, there was issued to Asenbauer a certificate authorizing him to store grain during the year ending July 31, 1927. Both bonds filed were in the form prescribed by law. The second bond filed and approved on 7th day of August, 1926, under the terms of which the bondsmen were held liable, was as follows:

"Know all Men by these Present:

"That we, Joe Asenbauer, doing business under the name of Joe Asenbauer, a warehouseman, of Herreid, South Dakota, as Principal, and J. Schoeck, et al., of the County of Campbell, State of So. Dak., as surety or sureties, are jointly and severally held and firmly bound to the State of South Dakota in the sum of Eight Thousand Dollars, and no-100, lawful money of the United States, to the payment of which, well and truly to be made, we bind ourselves and each of us and each of our successors, heirs, executors, administrators and assigns, firmly by these presents.

"The condition of this obligation is such that whereas the above bounden principal has made application to the Board of Railroad Commissioners of the State of South Dakota for a permit author-

izing the principal herein named to accept and store grain under the laws of the State of South Dakota during the year commencing August 1, 1926, and ending July 31, 1927, and whereas a permit is about to be issued by said Board of Railroad Commissioners to said Joe Asenbauer giving him authority as such owner or lessee of the warehouse named,—known as Mill elevator and located at Herreid, S. D., as aforesaid and having a capacity of 16000 bushels to carry on and conduct the business of a public warehouseman and to store grain in accordance with the laws of said State in relation thereto for the year commencing August 1, 1926, and ending July 31, 1927.

"Now therefore, if said Joe Asenbauer shall faithfully perform his duty as a public warehouseman, and shall fully and unreservedly comply with all laws of the State of South Dakota, in relation thereto, then this obligation to be void, otherwise to remain in full force and virtue.

"In witness whereof, the parties have hereunto set their hands and seals the 16th day of July, 1926.

> "Joe Asenbauer
> "J. Schoeck
> "L. Diebert
> "Jacob Schmidt
> "P. G. Albrecht."

The first bond filed was the same in words and figures, except as to the period of time covered by the bond and except that the first bond was not signed by Jacob Schmidt as surety.

The grain storage tickets upon which liabilty is here predicated were all issued by the defendant Asenbauer under conditions as follows: In the fall of 1925, and prior to April 20, 1926, when Asenbauer filed his first bond and qualified himself to accept grain for storage, there was hauled into his elevator grain of different kinds by different parties, for which grain Asenbauer simply issued scale tickets. Asenbauer told the different parties delivering the grain that he could not accept their grain for storage, that he had not qualified himself by filing a bond, and that he was not in the business of storing grain. However, the grain was deposited in the elevator and scale tickets issued for it. It does not appear from the evidence under what terms or conditions the grain was left in the elevator at the time it was deposited. Some time

after the filing of the bond on April 20, 1926, Asenbauer issued the storage receipts, upon which liability is here predicated, and dated them back to the time that the grain was received in the elevator. There is some conflict in the testimony as to just when Asenbauer issued these storage receipts. Asenbauer himself testified once that they were issued shortly after he received his permit to store grain, and testified later that they were not issued until some time in October, 1926, at a time when he was "broke." However, the trial court found that "immediately after the filing of the ware-houseman's bond in the office of the Railroad Commissioners on the 20th day of April, 1926, and after the issuance to the said defendant, Joseph Asenbauer, of the certificate No. 682 authorizing the said Joseph Asenbauer to store grain at the said warehouse," the defendant Asenbauer issued these storage receipts, which finding finds support in the evidence. It is material, and should be here pointed out, that there is no finding of the trial court that, at the time the permit was issued, Asenbauer had the grain on hand which was delivered to him and for which the receipts were issued, or that he had any other grain in the elevator of like kind and quality. Neither is there in the record any evidence that at the time the permit was issued, Asenbauer had on hand the actual grain that was delivered to him or had in the elevator any other grain of like kind and quality.

On October 21, 1926, the plaintiffs presented to the defendant Asenbauer their storage receipts, tendered to him the storage charges, and demanded their grain. Asenbauer at that time informed them that he was insolvent and could not deliver their grain either at the elevator or at the terminal market. Thereafter, this suit was commenced to recover upon the bonds of Asenbauer, and the trial court held the bondsmen, appearing upon the second bond, liable.

The appellants assign numerous errors, but we need consider only the assignment of the insufficiency of the findings to support the judgment. The appellants contend that any liability upon the storage tickets, issued under the facts as disclosed by the evidence, is not within the scope of either bond filed herein. We are of the opinion that this contention of the appellants should be sustained. Section 9753, Rev. Code 1919, provides as follows: "No warehouse receipt shall be issued except upon actual delivery

of grain into such warehouse." Under this provision of our law no liability could be sustained upon a warehouseman's bond (independent of the provisions of section 9759, Rev. Code 1919, hereinafter referred to), which liability was predicated upon a warehouse receipt issued by the warehouseman except upon actual delivery of grain into the warehouse. The bond is given for the purpose of securing those who deliver grain to the warehouse for storage and, unless grain is actually delivered for storage (or there is an estoppel under said section 9759), there can be no liability under the terms of the bond. Prior to the execution of the bond, the warehouseman had no permit from the board of railroad commissioners to accept grain for storage. Under the terms of the bond, the sureties obligate themselves only for liability arising due to the facts that there has been issued to the principal a permit to store grain. They are not liable for some act of the principal which occurred before a permit was issued. It is apparent from the reading and wording of the first bond that it is not within the contemplation of the bond that there should be any liability upon the sureties for any act of the warehouseman at a time when he had no permit from the railroad commissioners to accept and receive grain for storage. The bond was given to enable the principal to receive a permit, and it is only when the principal acts under a permit that any liability under the terms of the bond is contemplated.

The question now arises: Was there an actual delivery of grain to the warehouse after a permit to store grain was issued by the railroad commission, which would justify the issuance of the storage receipts and obligate the sureties upon the bond? We are of the opinion that the evidence will not sustain an affirmative answer to that question. There is no evidence in the record that at the time the permit was issued, there was in fact any grain of any kind or character or quality in the elevator in the possession of the defendant Asenbauer. There is no evidence that Asenbauer retained, either in the elevator or at any other point, the grain actually delivered to him, and for which these storage receipts were issued. Asenbauer testified: "Practically all of the grain for which I issued storage tickets was received at my elevator at Herreid before August 1, 1925." The grain being received before August 1, 1925, and the permit not being issued until

April 20, 1926, dispels any presumption Asenbauer had the actual grain in his possession at the time the permit was issued. There being no showing that Asenbauer had either the grain actually delivered or grain of like kind and quality in his possession, which was not subject to any other storage receipt or claim, at the time the permit was issued certainly it cannot be said that these storage receipts were issued for grain actually delivered to such warehouse, after Asenbauer received his permit to store grain.

 The respondents rely to some extent on section 9759, Rev. Code 1919, which provides as follows: "No person doing a grain warehouse or grain elevator business in this state, having issued a receipt for the storage of grain * * * shall thereafter be permitted to deny that the grain represented thereby is the property of the person to whom such receipt was issued * * * and such receipts shall be deemed and held, so far as the duties, liabilities and obligations of such bailee are concerned, conclusive evidence of the fact that the person to whom the same was issued * * * is the owner of such grain and is the person entitled to make surrender of such receipt and receive the grain thereby promised to be delivered." Under the authority of State ex rel. Sommers v. Surety Co., 48 S. D. 57, 201 N. W. 717, it might be that the warehouseman having once issued a storage receipt would be estopped from denying that the grain was actually delivered into the warehouse, but certainly there is nothing in the above-quoted section of our Code which would estop the sureties on the bond of the warehouseman from setting up as a defense to any claimed liability under the bond, that the warehouse receipt was issued by the warehouseman for grain which was not in fact delivered to the warehouseman or in his possession after a permit was issued, so long as the storage receipt is held by a person who knows the receipt was issued for grain delivered at a time the warehouseman had no permit.

 The evidence discloses that one and possibly two of the bondsmen had delivered grain to the defendant Asenbauer's warehouse prior to April 20, 1926, and that after April 20, 1926, Asenbauer issued to them a warehouse receipt covering the grain, and that they accepted the same. Respondent contends that for this reason these bondsmen should be held liable in this case, but this

showing is not sufficient to extend the scope of their liability under the terms and provisions of the written bond.

The judgment and order appealed from are reversed.

CAMPBELL, P. J. and POLLEY and WARREN, JJ., concur. ROBERTS, J., disqualified and not sitting.